OPINION

OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION

\*  \*  \*  \*

QUESTIONS PROPOUNDED BY THE HOUSE IN AN ORDER
PASSED MAY 10, 1951, ANSWERED MAY 10, 1951

HOUSE ORDER PROPOUNDING QUESTIONS

STATE OF MAINE

IN HOUSE OF REPRESENTATIVES

May 9, 1951

**Whereas,** there is now pending before the House of Representatives a bill, "An Act Creating the Maine School Building Authority" House Paper No. 1274, Legislative Document No. 824, a printed copy of which Document is hereto attached and made a part hereof and marked Exhibit A; and

**Whereas,** an Amendment identified as Committee Amendment "A" has been reported by the Committee on Judiciary to the House of Representatives, a copy of which proposed amendment is hereto attached and made a part hereof and marked Exhibit B; and

**Whereas,** an Amendment identified as House Amendment "A" to said Bill has been proposed, a copy of which proposed amendment is hereto attached and made a part hereof and marked Exhibit C; and

**Whereas,** there is now pending before the House of Representatives "Resolve, Proposing an Amendment to the Constitution to Exempt Rental Agreements with the Maine School Building Authority from the Limitations of Municipal Indebtedness" House Paper No. 1082, Legislative Document No. 695, a printed copy of which Document is hereto attached and made a part hereof and marked Exhibit D; and

**Whereas,** an Amendment identified as Committee Amendment "A" has been reported by the Committee on Judiciary to the House of Representatives, a copy of which proposed Amendment is hereto attached and made a part hereof and marked Exhibit E; and

**Whereas,** grave doubt has arisen as to the constitutionality of said bill with relation to:

1. The pledging of the credit of the State, directly or indirectly;

2. Limitation of municipal indebtedness; and

3. Diversion of state school funds; and

**Whereas,** to the House of Representatives of the 95th Legislature it appears that the questions herein raised are important and that the occasion is a solemn one,

**Now, therefore,** be it

ORDERED, That the Justices of the Supreme Judicial Court are hereby respectfully requested to give to the House of Representatives according to the provisions of the Constitution in this behalf their opinion on the following questions, to wit:

## Question 1

Would Bill, "An Act Creating the Maine School Building Authority," if enacted with or without amendments as proposed, pledge the credit of the State, directly or indirectly, contrary to the Constitution?

## Question 2

If the "Resolve, Proposing an Amendment to the Constitution to Exempt Rental Agreements with the Maine School Building Authority from the Limitations of Municipal Indebtedness," with or without the proposed amendment, were adopted by the people, would the provisions of Legislative Document No. 824, if enacted with or without amendments as proposed, violate any of the constitutional provisions relative to limitation of municipal indebtedness?

## Question 3

If the Resolve were not adopted by the people, would the provisions of Legislative Document No. 824, if enacted with or without amendments as proposed, violate any of the provisions of the Constitution relative to limitation on municipal indebtedness?

NINETY-FIFTH LEGISLATURE

EXHIBIT A

Legislative Document                                              No. 824

H. P. 1274     House of Representatives, February 21, 1951

Referred to the Committee on Judiciary. Sent up for concurrence and 1250 copies ordered printed.

HARVEY R. PEASE, Clerk

Presented by Mr. Low of Rockland.

STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN

HUNDRED FIFTY-ONE

## AN ACT Creating the Maine School Building Authority.

Be it enacted by the People of the State of Maine, as follows:

**Sec. 1. R. S., c. 37, §§ 212-228, additional.** Chapter 37 of the revised statutes is hereby amended by adding thereto 17 new sections, to be numbered 212 to 228, inclusive, to read as follows:

### Maine School Building Authority

**Sec. 212. Short title.** Sections 212 to 228, inclusive, shall be known and may be cited as the "Maine School Building Authority Act."

**Sec. 213. Purpose.** A general diffusion of the advantages of education being essential to the preservation of the rights and liberties of the people; to aid in the provision of public school buildings in the state, the "Maine School Building Authority," herein created, is hereby authorized and

empowered to construct, acquire, alter or improve public school buildings and to issue revenue bonds of the Authority, payable from rentals to finance such buildings and when paid for by said rentals to convey them to the lessee towns.

**Sec. 214. Credit of state not pledged.** Revenue bonds issued under the provisions of sections 212 to 228, inclusive, shall not be deemed to constitute a debt of the state of Maine nor a pledge of the credit of the state, but such bonds shall be payable solely from the funds herein provided therefor, and a statement to that effect shall be recited on the face of the bonds.

**Sec. 215. Organization of authority.** There is hereby created and established a body corporate and politic to be known as the "Maine School Building Authority." The Authority is hereby constituted a public instrumentality of the state, and the exercise by the Authority of the powers conferred by the provisions of sections 212 to 228, inclusive, shall be deemed and held to be the performance of essential governmental functions. The Maine School Building Authority shall consist of 7 members, including the governor, the commissioner of education, the senate chairman of the committee on education, and 1 member of the state board of education to be appointed by the governor, to serve during their incumbency in said offices, and 3 members at large appointed by the governor for terms of 3, 4 and 5 years respectively, to hold offices as follows: 1 until the completion of the 3rd full fiscal year following his appointment; 1 until the completion of the 4th such full fiscal year and 1 until the completion of the 5th such full fiscal year. All other original appointments of such members shall be for a period of 5 years, and said Authority shall constitute a body corporate and politic. A vacancy in the office of an appointive member, other than by expiration, shall be filled in like manner as an original appointment, but only for the remainder of the term of the retiring member. Appointive members may

be removed by the governor and council for cause. The state commissioner of education shall be chairman of the Authority. The Authority shall elect one of its members as vice chairman, and shall also elect a secretary and treasurer who need not be a member of the Authority to serve at the pleasure of the Authority. The secretary and treasurer shall be bonded as the Authority shall direct. Five members of the Authority shall constitute a quorum and the affirmative vote of 4 members shall be necessary for any action taken by the Authority. No vacancy in the membership of the Authority shall impair the right of the quorum to exercise all rights and perform all the duties of the Authority.

All members of the Authority shall be reimbursed for their actual expenses necessarily incurred in the performance of their duties and the appointive members shall receive, in addition, $10 per day for services actually rendered.

**Sec. 216. Definitions.** As used in sections 212 to 228, inclusive, the following words and terms shall have the following meanings, unless the context shall indicate another or different meaning or intent:

"Authority" shall mean the Maine School Building Authority created by sections 212 to 228, inclusive.

"Project" or the words "school project" shall mean a public school building or buildings or any extension or enlargement of the same, including land, furniture and equipment for use as a public school or public schools, together with all property, rights, easements and interests which may be acquired by the Authority for the construction or the operation of such project.

"Cost" as applied to a project shall embrace the cost of construction or acquisition, the cost of the acquisition of all land, rights-of-way, property, rights, easements and interests acquired by the Authority for such construction or

acquisition, the cost of demolition or removing any buildings or structures on lands so acquired, including the cost of acquiring any lands to which such buildings or structures may be moved, the cost of all furnishings and equipment, financing charges, insurance, interest prior to and during construction and, if deemed advisable by the Authority, for 1 year after completion of construction, cost of architectural and legal expenses, plans, specifications, estimates of cost, administrative expense and such other expense as may be necessary or incident to the construction or acquisition of the project, the financing of such construction or acquisition and the placing of the project in operation. Any obligation or expense hereafter incurred in connection with the construction or acquisition of a project may be regarded as a part of the cost of such project.

"School building" shall mean, but shall not be limited to, any structure used or useful for schools and playgrounds, including facilities for physical education.

"Town" or "towns" as used herein includes cities and plantations.

**Sec. 217. General grant of powers.** The Authority is hereby authorized and empowered:

I. To adopt by-laws for the regulation of its affairs and the conduct of its business;

II. To adopt an official seal and alter the same at pleasure;

III. To maintain an office at such place or places within the state as it may designate;

IV. To sue and be sued in its own name, plead and be implead; provided, however, that any and all actions at law or in equity against the Authority shall be brought only in the county in which the principal office of the Authority shall be located;

**V.** To construct or acquire, extend, enlarge, repair or improve school projects at such locations within the state as may be determined by the Authority, when the superintending school committee on any town or the community school committee of a community school district has certified the need therefor to the municipal officers of such town or the trustees of such community school district together with their recommendation for the procurement of new, additional or different public school buildings, and such recommendation has been approved by such municipal officers, town or towns, and by the state board of education. This Authority may acquire the properties of a town, a school district or community school district, subject to the liabilities thereof and under conditions consistent with the provisions of sections 212 to 228, inclusive, and may issue revenue bonds in replacement of the outstanding liabilities.

**VI.** To issue revenue bonds of the Authority for any of its corporate purposes, payable solely from the rentals and revenues pledged for their payment, and to refund its bonds, all as provided in sections 212 to 228, inclusive; and to secure any issue of such bonds by a trust agreement by and between the Authority and a corporate trustee, which may be any trust company or bank having the powers of a trust company within or without the state;

**VII.** To make temporary loans to finance individual projects until such time as the Authority may deem it advantageous to issue revenue bonds on said projects.

**VIII.** To fix, alter, charge and collect rentals and other charges for use of school projects financed under the provisions of sections 212 to 228, inclusive, at reasonable rates to be determined by it for the purpose of providing for the payment of the expenses of the Authority, the improvement, repair and maintenance of such projects, the payment of the principal of and the interest on its

revenue bonds, and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such bonds;

IX.  To acquire, hold and dispose of real and personal property in the exercise of its powers and the performance of its duties under the provisions of sections 212 to 228, inclusive.

X.  To acquire in the name of the Authority, by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the power of eminent domain, such lands or rights therein as it may deem necessary for carrying out the provisions of sections 212 to 228, inclusive.

XI.  To make and enter into all contracts, leases and agreements necessary or incidental to the performance of its duties and the execution of its powers under the provisions of sections 212 to 228, inclusive;

XII.  To utilize the services of agencies and departments of the state whenever feasible, and to employ such other persons and agents as may be necessary in its judgment, and to fix compensations;

XIII.  To accept from any authorized agency of the federal government loans or grants for the planning, construction or acquisition of any project and to enter into agreements with such agency respecting any such loans or grants, and to receive and accept aid and contributions from any source of either money, property, labor or other things of value, to be held, used and applied only for the purpose for which such loans, grants or contributions may be made; and

XIV.  To do all acts and things necessary or convenient to carry out the powers expressly granted in sections 212 to 228, inclusive.

**Sec. 218.   Contracts between Authority and towns.**   The Authority may authorize any town or towns or community school district, subject to the supervision and approval of the Authority, to design and construct any project and to acquire necessary land, furnishings and equipment therefor.   Any town or community school district is hereby authorized to convey to the Authority property, rights, easements and any other interests, which may be necessary or convenient for the construction and operation of any project and upon such terms as may be agreed upon between the Authority and town or community school district.   Any town or community school district may contract with the Authority for the lease or use of any project financed under the provisions of sections 212 to 228, inclusive, for such period and for such consideration and on such terms and conditions as such town or community school district and the Authority shall determine to be in the public interest, and all rentals or other charges provided by any such contract to be paid for the lease or use of such project shall be deemed to be current operating expenses of the town or the community school district, but shall be excluded in the computation for state school subsidy.   If a town or community school district shall be delinquent in its payments to the Authority, the state department of education shall make payment to the Authority in lieu of such town or community school district from any amounts properly payable to such town or community school district by such department, not exceeding the amount then presently due to the Authority from such town or community school district.   When the amount of rental paid by any town lessee of such school buildings shall equal the cost with interest paid out by the Authority, from its sale of bonds, the lessee shall be given full title to such building or buildings by said Authority.

**Sec. 219.   Revenue bonds.**   The Authority is hereby authorized to provide by resolution, at 1 time or from time to time, for the issuance of revenue bonds of the Authority for

the purpose of paying all or any part of the cost of any project or projects and for any purpose authorized in sections 212 to 228, inclusive. The principal of and the interest on such bonds shall be payable solely from the funds herein provided for such payment. The bonds of each issue shall be dated, and shall bear interest at such rate or rates, not exceeding 5% per year shall mature at such time or times not exceeding 40 years from their date or dates, as may be determined by the Authority, and may be made redeemable before maturity, at the option of the Authority, at such price or prices and under such terms and conditions as may be fixed by the Authority prior to the issuance of the bonds. The Authority shall determine the form of the bonds, including any interest coupons to be attached thereto, and shall fix the denomination or denominations of the bonds and the place or places of payment of principal and interest, which may be at any bank or trust company within or without the state. The bonds shall be signed by the chairman of the Authority or shall bear his facsimile signature, and the official seal of the Authority shall be impressed thereon and attested by the secretary and treasurer of the Authority, and any coupons attached thereto shall bear the facsimile signature of the chairman of the Authority. In case any officer whose signature or a facsimile of whose signature shall appear on any bonds or coupons shall cease to be such officer before the delivery of such bonds, such signature or such facsimile shall nevertheless be valid and sufficient for all purposes the same as if he had remained in office until such delivery. All bonds issued under the provisions of sections 212 to 228, inclusive, shall have and are hereby declared to have all the qualities and incidents of negotiable instruments under the negotiable instruments law of the state. The bonds may be issued in coupon or in registered form, or both, as the Authority may determine, and provision may be made for the registration of any coupon bonds as to principal alone and also as to both

principal and interest, and for the reconversion into coupon bonds of any bonds registered as to both principal and interest. The Authority may sell such bonds in such manner, either at public or at private sale, and for such price, as it may determine to be for the best interest of the Authority, but no such sale shall be made at a price so low as to require the payment of interest on the money received therefor at more than 5% per year, computed with relation to the absolute maturity of the bonds in accordance with standard tables of bond values; excluding, however, from such computation the amount of any premium to be paid on redemption of any bonds prior to maturity.

The proceeds of the bonds shall be used solely for the payment of the cost of the projects and shall be disbursed in such manner and under such restrictions, if any, as the Authority may provide in the resolution authorizing the issuance of such bonds or in any trust agreement securing the same.

Prior to the preparation of definitive bonds, the Authority may, under like restrictions, issue interim receipts, notes or temporary bonds, with or without coupons, which may be exchangeable for definitive bonds when such bonds shall have been executed and are available for delivery. The Authority may also provide for the replacement of any bonds which shall become mutilated or shall be destroyed or lost. Bonds may be issued under the provisions of sections 212 to 228, inclusive, without obtaining the consent of any departmental division, commission, board, bureau or agency of the state, and without any other proceedings or the happening of any other conditions or things than those proceedings, conditions or things which are specifically required by sections 212 to 228, inclusive.

**Sec. 220. Trust funds.** Notwithstanding the provisions of any other law, all moneys received pursuant to the authority of sections 212 to 228, inclusive, whether as proceeds

from the sale of bonds or as revenues, shall be deemed to be trust funds to be held and applied solely as provided in sections 212 to 228, inclusive. The resolution authorizing the bonds of any issue or any trust agreement securing such bonds shall provide that any officer with whom, or any bank or trust company with which, such moneys shall be deposited shall act as trustee of such moneys and shall hold and apply the same for the purposes hereof, subject to such regulations as sections 212 to 228, inclusive, and such resolution or trust agreement may provide.

**Sec. 221. Remedies.** Any holder of bonds issued under the provisions of sections 212 to 228, inclusive, or any of the coupons appertaining thereto, and the trustee under any trust agreement, except to the extent the rights herein given may be restricted by such trust agreement, may, either at law or in equity, by suit, action, mandamus or other proceeding, protect and enforce any and all rights under the laws of the state or granted hereunder or under such trust agreement or the resolution authorizing the issuance of such bonds, and may enforce and compel the performance of all duties required by sections 212 to 228, inclusive, or by such trust agreement or resolution to be performed by the Authority or by any officer thereof.

**Sec. 222. Revenue refunding bonds.** The Authority is hereby authorized to provide by resolution for the issuance of revenue refunding bonds of the Authority for the purpose of refunding any bonds then outstanding which shall have been issued under the provisions of sections 212 to 228, inclusive, including the payment of any redemption premium thereon and any interest accrued or to accrue to the date of redemption of such bonds; and, if deemed advisable by the Authority, for the additional purpose of constructing enlargements, extensions or improvements of the project or projects in connection with which the bonds to be refunded shall have been issued or constructing or acquiring

any additional project or projects. The issuance of such bonds, the maturities and other details thereof, the rights of the holders thereof and the rights, duties and obligations of the Authority in respect of the same shall be governed by the provisions of sections 212 to 228, inclusive, in so far as the same may be applicable.

**Sec. 223. Transfer to towns.** When the bonds issued under the provisions of sections 212 to 228, inclusive, in connection with any project and the interest thereon shall have been paid or a sufficient amount for the payment of such bonds and the interest thereon to the maturity thereof shall have been set aside in trust for the benefit of the bondholders, such project shall be conveyed by the Authority to the lessee town or community school district.

**Sec. 224. Preliminary expenses.** The state board of education is hereby authorized in its discretion and with the approval of the Authority to expend out of any funds available for the purpose, such moneys as may be necessary for any preliminary expenses of the Authority, including architectural and other services, and all such expenses incurred by the board prior to the issuance of revenue bonds under the provisions of sections 212 to 228, inclusive, shall be paid by the board and charged to the appropriate project or projects and the board shall keep proper records of accounts showing each amount so charged. Upon the issuance of revenue bonds for any project or projects, the funds so expended by the board in connection with such project or projects shall be reimbursed to the board from the proceeds of such bonds.

**Sec. 225. Bonds eligible for investment.** Revenue bonds and revenue refunding bonds issued under the provisions of sections 212 to 228, inclusive, are hereby made securities in which all public officers and public bodies of the state and its political subdivisions, all insurance companies, trust companies and their commercial departments, banking associ-

ations, investment companies, savings banks, executors, trustees and other fiduciaries, and all other persons who are now or may hereafter be authorized to invest in bonds or other obligations of a similar nature, may properly and legally invest funds, including pension and retirement funds or capital under their control or belonging to them. Such bonds are hereby made securities which may properly and legally be deposited with and received by any state or municipal officer or any agency or political subdivision of the state for any purpose for which the deposit of bonds may be authorized by law.

**Sec. 226. Additional method.** Sections 212 to 225, inclusive, shall be deemed to provide an additional and alternative method for the doing of the things authorized thereby, and shall be regarded as supplemental and additional to powers conferred by other laws, and shall not be regarded as in derogation of any powers now existing; provided, however, that the issuance of revenue bonds or revenue refunding bonds under the provisions of sections 212 to 228, inclusive, need not comply with the requirements of any other law applicable to the issuance of bonds.

**Sec. 227. Liberally construed.** The provisions of sections 212 to 228, inclusive, being necessary for the welfare of the state and its inhabitants, shall be liberally construed to effect the purposes thereof.

**Sec. 228. Exemption from taxation.** As the exercise of the powers granted by sections 212 to 228, inclusive, will be in all respects for the benefit of the people of the state and for the improvement of their educational facilities, and as projects constructed under the provisions of said sections constitute public property, the Authority shall not be required to pay any taxes or assessments upon any bonds issued under the provisions of sections 212 to 228, inclusive, their transfer and the income therefrom including any profit

made on the sale thereof shall at all times be free from taxation within the state.'

**Sec. 2. Appropriation.** In order to provide for the necessary expenditures in the administration of the Authority created by section 1 of this act, for the fiscal years ending June 30, 1952 and June 30, 1953, there are hereby appropriated the sums of $15,000 for such use in each of said fiscal years, or so much thereof as shall severably be found necessary, out of any moneys in the general fund not otherwise appropriated.

## EXHIBIT B

Committee Amendment "A" to H. P. 1274, L. D. 824, Bill "An Act Creating the Maine School Building Authority."

Amend said Bill by adding at the end of that part designated "Sec. 218." thereof the following underlined paragraph:

'No contract or agreement between a town or towns or community school district and the Authority shall be valid unless first approved by the inhabitants of the town or towns involved either individually or as members of a community school district.'

Further amend said Bill by adding, after the underlined word "Authority" in the 3rd line of that part designated "Sec. 219." thereof, the following underlined words and figures: 'but not to exceed $15,000,000 outstanding'

Further amend said Bill by inserting, before the underlined words "any project" in the 6th line of that part designated "Sec. 228." thereof, the following underlined words: 'any of its property or'

Reported by a Majority of the Committee on Judiciary.

EXHIBIT C

House Amendment "A" to H. P. 1082, L. D. 695, "Resolve, Proposing an Amendment to the Constitution to Exempt Rental Agreements with the Maine School Building Authority from the Limitations of Municipal Indebtedness."

Amend said Resolve by striking out the 2nd paragraph thereof and inserting in place thereof the following paragraph:

'**Constitution, Art. IX, Section 15, amended.** Section 15 of Article IX of the constitution, as amended, is hereby further amended by adding at the end thereof a new sentence, to read as follows:'

Filed by Mr. Low of Rockland.

EXHIBIT D

NINETY-FIFTH LEGISLATURE

Legislative Document                              No. 695

H. P. 1082      House of Representatives, February 14, 1951

Referred to the Committee on Judiciary. Sent up for concurrence and ordered printed.

HARVEY R. PEASE, Clerk

Presented by Mr. Senter of Brunswick.

STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN

HUNDRED FIFTY-ONE

**RESOLVE, Proposing an Amendment to the Constitution to Exempt Rental Agreements with the Maine School Building Authority from the Limitations of Municipal Indebtedness.**

**Constitutional amendment. Resolved:** Two-thirds of each branch of the legislature concurring, that the following amendment to the constitution of this state be proposed:

**Constitution, Art. XXII, amended.** Article XXII of the constitution, as amended by article XXXIV, is hereby further amended by adding at the end thereof a new sentence, to read as follows:

'Long term rental agreements under contracts with the Maine School Building Authority shall not be considered debts or liabilities within the provisions of this article.'

**Form of question and date when amendment shall be voted upon. Resolved:** That the aldermen of cities, the selectmen of towns and the assessors of the several plantations of this state are hereby empowered and directed to notify the inhabitants of their respective cities, towns and plantations to meet in the manner prescribed by law for calling and holding biennial meetings of said inhabitants for the election of senators and representatives at the next general or special state-wide election, to give in their votes upon the amendment proposed in the foregoing resolution, and the question shall be: "Shall the constitution be amended as proposed by a resolution of the legislature to exempt rental agreements with the Maine School Building Authority from the limitations of municipal indebtedness?"

And the inhabitants of said cities, towns and plantations shall vote by ballot on said question, those in favor of the amendment voting "Yes" upon their ballots and those opposed to the amendment voting "No" upon their ballots, and the ballots shall be received, sorted, counted and declared in open ward, town and plantation meetings and returns made to the office of the secretary of state in the same manner as votes for governor and members of the legislature, and the governor and council shall count the same, and if it shall appear that a majority of the inhabitants voting on the question are in favor of the amendment, the governor shall forthwith make known the fact by his proclamation, and the amendment shall thereupon, as of the date of said proclamation, become a part of the constitution.

**Secretary of state shall prepare ballots.  Resolved:** That the secretary of state shall prepare and furnish to the several cities, towns and plantations ballots and blank returns in conformity with the foregoing resolve, accompanied by a copy thereof.

## EXHIBIT E

Committee Amendment "A" to H. P. 1082, L. D. 695, Resolve, Proposing an Amendment to the Constitution to Exempt Rental Agreements with the Maine School Building Authority from the Limitations of Municipal Indebtedness.

Amend said resolve by inserting after the underlined word "agreements" in the fourth line thereof, the underlined words and figures 'not exceeding 40 years.'

Further amend said resolve by striking out in the fifth line thereof the underlined word "considered."

Reported by a Majority of the Committee on Judiciary.

## ANSWERS OF THE JUSTICES

To the Honorable House of Representatives of the State of Maine:

The undersigned Justices of the Supreme Judicial Court, in accordance with the provisions of the Constitution, respectfully answer herein the questions propounded by the House of Representatives in an order dated May 9, 1951 passed May 10, 1951 relative to House Paper No. 1274, Legislative Document No. 824 entitled "An Act Creating the Maine School Building Authority," with proposed amendment identified as Committee Amendment "A" together with "Resolve, Proposing an Amendment to the Constitution to Exempt Rental Agreements with the Maine School Building Authority from the Limitations of Municipal Indebtedness," House Paper No. 1082, Legislative Document No. 695, and proposed amendments identified as Committee Amendment "A" and House Amendment "A."

### Question 1

The Bill "An Act Creating the Maine School Building Authority" if enacted with or without amendment, as proposed, would not pledge the credit of the State contrary to the Constitution.

### Question 2

If the "Resolve, Proposing an Amendment to the Constitution to Exempt Rental Agreements with the Maine School Building Authority from the Limitations of Municipal Indebtedness," with or without amendment, as proposed, be adopted by the people, the provisions of Legislative Document No. 824, if enacted, with or without amendment, as proposed, will not violate the constitutional provisions relative to limitation of municipal indebtedness.

## Question 3

If the resolve be not adopted by the people, the provisions of Legislative Document No. 824, if enacted, with or without amendment, as proposed, will not violate the provisions of the Constitution relative to limitation on municipal indebtedness. Any action taken under the act, however, would violate the provisions of the Constitution if the municipal indebtedness in any particular instance or instances is thereby increased beyond constitutional debt limits. The declaration in Section 218, of the proposed act, that "all rentals or other charges provided by any such contract to be paid for the lease or use of such project shall be deemed to be current operating expenses of the town or the community school district" neither controls nor determines the nature of the liability created by the lease. So long as Section 15 of Article IX of the Constitution (as now codified) remains unchanged, the liabilities of municipalities must be determined in accordance with the principles declared in *Reynolds* v. *City of Waterville,* 92 Me. 292; and in *Opinions of the Justices,* 99 Me. 515, and 146 Me. 183, 79 Atl. (2nd) 753.

Dated at Augusta, Maine, this tenth day of May, 1951.

Respectfully submitted:

> HAROLD H. MURCHIE
>
> SIDNEY ST. F. THAXTER
>
> RAYMOND FELLOWS
>
> EDWARD F. MERRILL
>
> WILLIAM B. NULTY
>
> ROBERT B. WILLIAMSON